FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Mar 1, 2019
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| MICHELLE WARNER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> LITTLE JOHN TRANSPORTATION SERVICES, INC.; CHRISTOPHER DALE; STEVEN DALE. <br><br> Defendants. | Case. No. 19-5042 PKH <br><br> JURY TRIAL DEMANDED <br><br> COLLECTIVE AND CLASS ACTION |

## COMPLAINT

Plaintiff Michelle Warner, on behalf of herself and all other similarly situated employees, comes before this Court and for her Complaint states:

### INTRODUCTION

Michelle Warner ("Plaintiff") brings this collective action individually and on behalf of others similarly situated against Little John Transportation Services, Inc. ("Little John"), Christopher Dale, and Steven Dale to remedy violations of the Fair Labor Standards Act ("FLSA") (as amended), 29 U.S.C. section §201, *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Arkansas Code Annotated section 11-4-211; for Declaratory Judgements pursuant to A.C.A. section 16-111-101 *et seq.* and 28 U.S.C. section 2201; and/or for Equitable Relief. Plaintiff seeks full back pay, liquidated damages, prejudgment and post-judgment interest, reasonable attorney's fees, costs, and expenses, and any and all other relief to which each Plaintiff is entitled as a result of the violations of the Defendants alleged herein. The Plaintiff further seeks Declaratory Relief that certain Non-Competition and Non-Solicitation Agreements required by Little John as a condition of employment are void and unenforceable under Arkansas law.

**PARTIES, JURISDICTION, & VENUE**

1. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. sections 1331, 1337 and 29 U.S.C. section 201, *et seq.* Plaintiff also seeks a permanent injunction and a declaratory judgment under 28 U.S.C. sections 2201 and 2202 and A.C.A. section 16-111-101 *et seq.*, declaring that the Defendants violated the FLSA and AMWA through their payment practices and procedures regarding the employee Plaintiff and all others similarly situated, and further that the Defendants' imposition of certain non-competition agreements for each employee is contrary to Arkansas law. This Court also has jurisdiction over Plaintiff's claims under Arkansas Code Annotated sections 11-4-211, 218 and under section 16-111-101 *et seq.*, pursuant to the plenary power of the Court to invoke its pendant jurisdiction over causes of action arising under the laws of the State of Arkansas.

2. Venue herein is proper under 28 U.S.C. section 1391.

3. At all times relevant to this lawsuit, Plaintiff and those similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. section 201 *et seq.*

4. Plaintiff, on behalf of herself and all those similarly situated, seeks this collective action for compensation and other relief under the FLSA, as amended, 29 U.S.C. sections 215, 216(b) and 217.

5. Plaintiff is an individual residing in Farmington, Arkansas, in the Fayetteville Division of the Western District of Arkansas and is employed as an "Agent" for Little John.

6. Little John Transportation Services, Inc. ("Little John") is an Arkansas Corporation that maintains its home office in the State of Arkansas with the registered agent address of Christopher Dale, 1819 S. Knoxville, Russellville, AR 72802.

7. Defendant Christopher Dale is a co-owner of Little John and is an individual who resides in the State of Arkansas and established and maintained the polies at issue in this case. At all times relevant Christopher Dale was the Plaintiff's employer and is and has been engaged in interstate commerce as that term is defined under the FLSA.

8. Defendant Steven Dale is a co-owner of Little John and is an individual who resides in the State of Arkansas and established and maintained the policies at issue in this case. At all times relevant Steven Dale was the Plaintiff's employer and is and has been engaged in interstate commerce as that term is defined under the FLSA.

9. The term "Defendant" or "Defendants" may be used interchangeably to refer without limitation to any or all of the named Defendants in this case.

10. Venue is proper in this Court as the Plaintiff resides in this District and this Division, and the Defendant maintains its home office within this District.

## FLSA COLLECTIVE ACTION ALLEGATIONS

11. At all times relevant, Defendant engaged in interstate commerce with an annual volume of sales of not less than $500,000, and Defendant constitutes an "enterprise" engaged in commerce as defined in 29 U.S.C. sections 203(r), 203(s).

12. At all times relevant, Defendant has been an "employer" engaged in interstate commerce and/or production of "goods" for "commerce" within the meaning of FLSA, 29 U.S.C. section 203.

13. Plaintiff seeks to represent a company-wide collective action of all persons who worked for or work for Little John as an Agent and who were/are subject to Little John's unlawful pay practices and policies described herein at any point from March 1, 2016, to the present (members of this putative class are referred to herein as "Putative Plaintiffs").

14. Plaintiff's claims are typical of the claims of Putative Plaintiffs, because she, like all Putative Plaintiffs, was an employee of Little John whom Little John failed to pay overtime as required by the FLSA from March 1, 2016, through the present.

15. Plaintiff will fairly and adequately protect the interests of Putative Plaintiffs, because her interests are consistent with those of the class, and because she has retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

16. No difficulties are expected to be encountered in the management of this collective action that would preclude its maintenance as a collective action. The class will be easily identifiable from Little John's records.

17. Similarly situated employees are known to Little John and are readily identifiable by Little John and can be located through its records. Plaintiff does not know the exact size of the potential class, as such information is in the exclusive control of Little John; however, on information and belief, the number of potential Putative Plaintiffs is estimated to be more than one-hundred current employees and more former employees.

18. This FLSA collective action, 29 U.S.C. section 207, should be defined specifically as follows:

    "All Agents employed by Little John Transportation Services, Inc., within the three (3) years preceding the filing of this action, who were paid on a salary and commission basis and were classified as "exempt" workers or were otherwise excluded from receiving overtime compensation for time worked in excess of forty (40) hours in any given workweek in violation of the Fair Labor Standards Act."

19. The common questions of law and fact for each member of the collective actions predominate over questions that affect only individual members of the class. Among those questions of law and fact common to the class is whether Little John failed to compensate its Agents for all time worked by each Agent exceeding forty (40) hours in any given week.

## AMWA CLASS ACTION ALLEGATIONS

20. Plaintiff restates and incorporates the preceding paragraphs of her Complaint herein by reference.

21. Pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act of 2005, Plaintiff brings her claims for relief on behalf of herself and those similarly situated.

22. She seeks to represent a class of all persons who worked or work for Defendants as Agents or Freight Brokers at some point within the time period of March 1, 2016, to the present.

23. The class is so numerous that the joinder of all class members is impracticable. Plaintiff does not know the exact size of the class, as such information is in the exclusive control of Defendants; however, on information and belief, the number of potential class members is estimated to be more than one-hundred.

24. Plaintiff's claims are typical of the claims of the putative class members, because Plaintiff, like all Class Plaintiffs, was an employee of Defendants who was denied overtime compensation for certain compensable hours worked in violation of Arkansas law.

25. She also seeks to represent a class of all persons who worked or work for Defendants and who, as part of their employment, were subject to certain uniform "Non-Competition Agreements" required by Little John for each of its employees, with such potentially affected employees being those employed by Little John at some point within the time period of March 1, 2009, to the present.

26. Plaintiff's claims related to her non-competition agreements are also typical of the claims of the putative class members, because Plaintiff, like all Class Plaintiffs, was subject to these certain non-competition agreements as part of her employment with Little John.

27. Plaintiff will fairly and adequately protect the interests of the putative class, because her interests are consistent with and not contrary to those of the class. Plaintiff has retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

28. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action. The class will be easily identifiable from Defendants' records.

29. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously. Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying

adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants. Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendants.

30. This first group of this Class should be defined specifically as follows:

> "All Agents employed by Little John Transportation Services, Inc., within the three (3) years preceding the filing of this action, who were paid on a salary and commission basis and were classified as "exempt" workers or were otherwise excluded from receiving overtime compensation for time worked in excess of forty (40) hours in any given workweek in violation of the Arkansas Minimum Wage Act."

31. The common questions of law and fact for each member of the first group of this Class Action Class predominate over questions that affect only individual members of the class. Among those questions of law and fact common to the class is whether Little John failed to compensate its Agents overtime for all time worked by each Agent over forty (40) hours in any given week in violation of the Arkansas Minimum Wage Act.

32. This second group of this Class should be defined specifically as follows:

> "All individuals employed by Little John Transport Services, Inc., within ten (10) years preceding the filing of this action, who were subject to certain non-competition agreements entered into subject Arkansas law by its terms."

33. The common questions of law and fact for each member of the class action group predominate over questions that affect only individual members of the class. Among those questions of law and fact common to the class is whether Little John implemented the use of restrictive covenants in its Non-Competition Agreements that were, or are, contrary to Arkansas law.

## FACTUAL ALLEGATIONS RELATED TO OVERTIME

34. Plaintiff restates and incorporates the preceding paragraphs of her Complaint herein by reference.

35. Little John acts as an agency for the transportation company Landstar Systems, Inc. ("Landstar"), based in Jacksonville, Florida.

36. As its model for employment, Little John uses full-time salaried employees known as "Agents" to procure freight customers and then to broker such freight either to Landstar-designated carriers or to third-party carriers as may be allowed by the customer.

37. Little John then receives a percentage of the profit from each brokered load pursuant to an agreement with Landstar.

38. Plaintiff and the Putative Plaintiffs were all directly employed as Agents of the Defendant.

39. Plaintiff and the Putative Plaintiffs were not compensated for hours they worked exceeding forty (40) hours in any given week.

40. Little John does not pay overtime to its Agents.

41. Excepting few "Home Agents," who worked from home but did not perform outside sales-related services, Plaintiff and the rest of the Putative Plaintiffs worked from offices provided by Little John in either Springdale, Arkansas; Russellville, Arkansas; or Houston, Texas. Each office included a desk, an executive chair, a computer with internet access and email, and other accoutrements of a typical business office.

42. Little John Agents are not employed in an administrative capacity for Little John, nor do any Agents fill that role for Little John's customers, inasmuch as they do not perform any work related to the operation of Little John's business but instead focus their work on production of revenue for Little John in the interest of Little John.

43. In exchange for each Agent's services, including the Plaintiff's, Little John agreed to pay a guaranteed base rate salary less than $455.00 per week plus commissions (if any were earned) for each Agent's performance in brokering freight. See Exhibit A, Plaintiff Example Paystub.

44. Little John requires that its Agents procure and manage loads of freight, and it requires that the Agents continue this management for each load as long as any certain load is in transit such that the responsible Agent must be available to assist with that load at any time.

45. The act of managing those loads involves significant work after Little John's normal business hours, and as a result, Little John Agents are effectively precluded from engaging in other activities outside of work hours as each is on call whenever a load is in transit, which may be all hours of any given day or night.

46. During normal working hours (7:30 am to 4:30 pm) for forty (40) hours per week, each Agent is required to clock in when arriving and clock out when leaving the office.

47. There is no such mechanism for timekeeping after normal working hours or during weekends.

48. At one point in the Summer of 2016, Little John attempted to institute a policy for recording time after hours, but such policy was only implemented for roughly one month. *See* Exhibit B, 2016 Email Policy.

49. Plaintiff and those similarly situated frequently worked over forty (40) hours in a week for Defendant, as they were required to immediately answer emails and customer contacts, obligated to provide troubleshooting for issues with loads, and encouraged to continue to seek loads or contacts after hours.

50. Upon information, among other edicts related to working after hours, below are examples of instructional flyers and emails from the Defendants instructing Agents to the following issues concerning time worked or working from their own person cellular phones, for which the Agent is responsible and for which the Agent pays:

   A. From "A Successful Freight Salesperson" flyer:

   *"Time Management – (Doesn't waste time and works 9 hours 5 days a week)"*

   B. From January 13, 2019 email entitled "no subject":

   *"\*Answer your* [personal cell] *phone when there is an issue with a driver or whatever. If you don't answer the calls go to Anna, she forward to you then if still*

8

*no answer the calls go to corporate. Either way they will come back to you in some way so please just deal with the problems.*

*I have heard the comment "that's not my job" well guess what it is your job if you want to get paid on the load."*

*"Make sure that you have your own message on your voicemail and keep your voicemails clear. We have had numerous calls saying that so and so voicemail is full and I can't leave a message."*

C. From November 13, 2018 email entitled "Reminders":

*"All agents need to work **40 or more** hours per week; this is not a suggestion, it is a requirement"* (emphasis in original).

D. From February 8, 2018 email entitled "Fonality":

*"For those of you that aren't aware you can program your desk phone so that any messages left on it will be automatically transferred to your cell phone by…"*

E. From September 19, 2017 email entitled "How would you describe yourself to your customer?":

*"This is the list we put together in the training room today. Who are we?...We are available 24/7…"*

F. From November 4, 2016 email entitled "No ZEROS":

*"Make contact for next week too before your customers go home. Let them know you are here if they need you.*

*Remember we booked about 50,000 last Saturday*
*If your phone rings on a Saturday hang it in them."*

G. From September 2, 2016 email entitled "Fwd: phone message center instructions":

*"BE SURE TO FORWARD YOUR PHONES AND TAKE YOUR PAPERWORK WITH YOU! IF YOU DON'T GET YOUR CALLS THEY CALL CORPORATE WHO CALLS ME AND THAT'S NOT GOOD. IF YOU HAVEN'T DONE SO, PLEAE (sic) SEE THE INSTRUCTIONS BELOW ON HOW TO RECORD YOUR NAME AND MESSAGE ON YOUR PHONE"* (emphasis in original).

51. Upon information, Little John requires each Agent to be available by his or her cell phone (paid for by each agent individually and without reimbursement for phone service by Little John) at any time a load is in transit.

52. Upon information, if the load is "on the board," meaning active, management of that load is the Agent's responsibility no matter what time an issue may arise with that load.

53. Defendant had no method or mechanism of timekeeping for Plaintiff or Putative Plaintiffs to record and/or report overtime.

54. Within the relationship between Little John and each Agent, there is no clear understanding that the base salary is pay for all hours worked including those over 40 per week.

55. Upon information and belief, Little John informs Agents that their overtime pay comes in the form of non-guaranteed commissions.

56. Upon information and belief, Plaintiff and each Putative Plaintiff was misclassified as exempt for the purposes of excluding each of them from receiving overtime compensation.

57. Plaintiff and each Putative Plaintiff, upon information and belief, are, and have been for the past three years, paid a weekly base salary of less than $455.00 per week plus any commissions earned.

58. Upon further information and belief, notwithstanding that the base salary was less than $455.00 per week, Plaintiff and each Putative Plaintiff were subjected to deductions in pay in the event that the loads they brokered incurred certain costs (*e.g.*, permits related to asset carriers' Landstar trucks).

59. Each Agent was also subject to deductions in pay by virtue of "fines" assessed against them for any erroneous data entry into the Little John system. *See* Exhibit C, 2019 Policy related to Deductions in Pay.

60. Such deductions practices are believed to have taken place since at least November 10, 2016 when Chris Dale said:

    *"I am about to start paying you on a percentage of completion. What I mean is if you put about 50% of the info in the APP I require I'm going to pay you about 50% of the commission."*

61. No FLSA exemption applies to individuals paid a guaranteed base salary of less than $455.00 per week, and further no FLSA exemption applies even if such pay was more than $455.00

per week where such pay is subject to deductions as stated in the policies of Little John (Ex. C.) or where the work performed is not otherwise exempted by the FLSA from overtime.

62. Further, Little John does not guarantee to the Plaintiff or the Putative Plaintiffs any commission for any given week.

63. As shown by the above directives, Plaintiff and each Putative Plaintiff were required to be on call at all times and with such stringency that each was effectively engaged to be waiting.

64. Little John does not have or maintain, and has never had or maintained, any system of accurate time accounting or determination of time worked by Agents away from the office.

65. Defendant's business operations and the wages and compensation for Plaintiff and all others similarly situated are substantially the same, if not identical, at each of Defendant's office locations.

66. By its actions, Defendant knowingly failed to pay overtime to Plaintiff and all others similarly situated in violation of the FLSA.

67. Defendant's conduct is willful and in bad faith. Plaintiff and all others similarly situated are entitled to liquidated damages for such conduct and for an applicable statute of limitations period of three years.

## ALLEGATIONS RELATED TO NON-COMPETITION AGREEMENTS

68. Plaintiff restates and incorporates the preceding paragraphs of her Complaint herein by reference.

69. At the time each Little John employee begins work with Little John, he or she is required to execute and agree to certain Non-Competition Agreements which contain restrictive covenants related to non-competition, non-disclosure, and non-solicitation. *See* Exhibit D, Non-Compete Agreement; Exhibit E, Landstar Non-Compete Agreement.

70. The Non-Compete agreement is by its terms subject to the laws of Arkansas.

71. The Non-Compete agreement decrees that the territory for services and for future restrictions encompasses the entire United States.

72. The Non-Compete, by its terms, limits during its term (during employment and for two years thereafter) any employee's ability to engage in "activity competitive with Company," and", it includes in that restriction "affiliation with, employment by, or connection with (whether directly or indirectly) as an officer, agent, consultant, manager, or contractor of any entity which engages (or engages through an affiliated entity) in the Business of the Company within the Territory." *See* Exhibit D.

73. The Non-Compete, by its terms, also prohibits certain disclosures by each employee, specifically recognizing "the competitive unfairness that would result should Employee disclose any of the information to anyone else dealing in the Business of the Company [defined elsewhere as 'Freight Brokerage Services'] or use that information for Employee's own benefit." *Id.*

74. Upon information and belief, the intent of this clause is to prohibit prospective competition and not to protect any legitimate business interest as defined by Arkansas common law or statute.

75. The Non-Compete agreement restricts each employee's ability to "[s]olicit, attempt to obtain, or in any way transact business with any accounts or customers which were held or maintained by or on behalf of Company as of Employee's date of termination." *Id.*

76. On information and belief, upon termination from employment, Little John provides no notice to any terminated employee of the accounts or customers which it believes to be covered by this provision of the agreement.

77. The Non-Compete Agreement restricts any current or former employee from aiding or assisting any other party in the solicitation of such customers or accounts of Little John and further attempts to restrict the ability to hire or entice away any employees of the Little John or to induce any employee to terminate his employment with the company. *Id.*

78. The Non-Compete Agreement restricts any employee from attempting to obtain authority to act as an agent of the Landstar System, Inc., or to obtain a Landstar production code. *Id.*

79. The Non-Compete Agreement further restricts any employee from "[o]therwise interfering with existing relationships with such customers or accounts, wherever located, by soliciting such customers or inducing them to discontinue their relationship with [Little John]." *Id.*

80. In addition to the Non-Compete Agreement, Little John also requires each prospective employee to execute a "Landstar Non-Competition Agreement," ("LNCA"). *See* Exhibit E.

81. The LNCA states that it is executed in consideration for the "Company's investment in the training of agent." *Id.*

82. Little John's training of any Agent consists only of on-the-job practice and does not require any further investment from the company, nor does Little John provide any funds for educational training or other programs that would constitute a protectable legitimate business interest.

83. The LNCA requires that any Agent not "seek employment with Landstar System in any capacity as an employee or agent for and employee of contractor of anyone else who is an agent or employee of Landstar System for a period of 10 years after terminating employment with Little John."

84. The LCNA also requires that the "Agent also agrees not to be employed in any capacity by any company that brokers freight to Landstar System or accepts broker freight from Landstar System or has done business with Little John through Landstar System." *Id.*

85. The immediately referenced limitation of the LCNA has no geographic restriction or time period associated with it.

86. Upon information and belief, these agreements are nonnegotiable, and each Agent for Landstar, whether in Arkansas or Texas, has been required to execute the same documents prior to commencing employment.

87. Upon information and belief, when employees ask for signed copies of their restrictive covenant agreements from Management, they are retaliated against with threats of termination and in some cases are in fact terminated.

## **CAUSES OF ACTION**

### **COUNT I: VIOLATION OF 29 U.S.C. § 207**
### **FAILURE TO PAY OVERTIME COMPENSATION**

88. Plaintiff restates and incorporates herein by reference the preceding paragraphs of their Complaint as if fully set forth herein.

89. Defendants Little John, Chris Dale, and Steven Dale, by and through their employees and agents, have violated the rights of Plaintiff as provided by the FLSA, 29 U.S.C. section 207.

90. Plaintiff and others similarly situated are lawfully non-exempt employees but were classified as exempt employees.

91. Plaintiff and others similarly situated worked more than forty (40) hours in a week on more than one occasion during the past three years.

92. Defendants dp not have, and have never had, any accurate system of time accounting or determination of time worked by Agents away from the office.

93. In short, Agents are not able to clock in or clock out when working away from the office and there is no mechanism in place for Agents to record his or her time.

94. Each Defendant has violated the FLSA by failing to pay Plaintiff and all other similarly situated salespersons overtime compensation at a rate of one and one-half times his or her regular rate for all hours worked in excess of forty (40) hours per week.

95. Defendant have each failed to make a good faith effort to comply with the FLSA.

96. Each Defendant's conduct was willful within the meaning of 29 U.S.C. section 225(a).

97. The Defendants have each knowingly failed to compensate the Plaintiffs and other similarly situated individuals for their work, electing instead to accept the benefit of uncompensated work.

98. The Defendants have each failed to maintain accurate employee pay records, including the number of hours worked per workweek, by Plaintiff and others similarly situated.

99. Defendants had an obligation to keep accurate records but failed to do so. *See, e.g.,* Ex. B (illustrating failed policy). As such, Plaintiff and others similarly situated are allowed to rely on their own best estimates for calculating the amount of time worked before and after shifts.

100. In willful violation of the FLSA, Defendants failed to pay Plaintiff and others similarly situated an overtime premium equal to one and one-half times their "regular rate" for all overtime hours each workweek.

101. No exemption prevented the Defendant from paying Plaintiff and all others similarly situated proper overtime compensation.

### COUNT II: VIOLATION OF ARKANSAS CODE ANNOTATED §11-4-211, FAILURE TO PAY OVERTIME COMPENSATION

102. Plaintiff restates and incorporates herein by reference the preceding paragraphs of her Complaint.

103. The acts and omissions alleged herein are in violation of Arkansas Code Annotated section 11-4-211 (as amended).

104. Plaintiff and others similarly situated each worked more than forty (40) hours in a single workweek.

105. For each of those occasions, over the past three years, Defendant failed to pay Plaintiff and others similarly situated overtime pay of one and one-half times his or her rate.

106. Plaintiff brings these claims on her own behalf and on behalf of all other similarly situated Agents who have not been fully compensated for work performed and time spent for the benefit of Defendant.

107. Plaintiff and other similarly situated individuals were denied overtime wages as a result of Defendant's pay practices.

108. This violation was willful, intentional, and deliberate.

109. Plaintiff's requests related to this prayer for damages under the Arkansas Minimum Wage Act meet the requirements of Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

### COUNT III:  DECLARATORY JUDGMENT
### PERTAINING TO NON-COMPETITION AND NON-SOLICITATION AGREEMENTS

110. Pursuant to A.C.A. section 16-111-102 *et seq.*, any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

111. The Non-Compete agreement each Agent has signed is overly broad in its geographic scope. The application of a nationwide limitation is not reasonably tailored to protect a legitimate business interest of Little John but instead is for the purpose of eliminating ordinary competition. *See Bendinger v. Marshalltown Trowel Co.,* 994 S.W.2d 468, 472 (Ark. 1999)

112. The Non-Compete Agreement is unreasonable in that it does not protect Little John's legitimate business interests. Former employees are not made aware of any specific customers with whom they are is prohibited from working or soliciting business, and the Non-Compete Agreement requires no connection to Little John's business other than the fact of another potential employer for each agent being involved in freight brokerage services.

113. The Non-Compete Agreement is also unreasonable because it includes restrictions on disclosure of certain information, the disclosure of which is protected by the National Labor Relations Act, section 7 (*e.g.*, payroll, benefit plans and information, and compensation plans).

114. The Landstar Non-Competition Agreement is unreasonable in its duration and scope. To limit each Agent's ability to be employed by or affiliated in any way with any company doing business with Landstar is wholly unreasonable.

115. Such terms have the chilling effect of eliminating all competition between Little John and any of its employees or former employees for such a period as to be a permanent bar on competition.

116. Little John should not be able to use these types of contract as a subterfuge to rid himself of a possible future competitor. *Bailey v. King*, 398938 S.W.2d 906, 908 (Ark. 1966).

117. Arkansas Code Annotated section 4-75-10 addresses the enforceability of restrictive covenants and went into effect on July 22, 2015.

118. It permits the Court to reform such agreements to the point where they are reasonable and enforceable.

119. Arkansas Code Annotated section 4-75-101 by its terms does not include retroactive enforceability. *See Box v. J.B. Hunt Transport, Inc.*, 533 S.W.3d 603, 613 (Ark. App. 2017).

120. As such, the Court should declare that any Non-Competition Agreement entered into between any Agent and Little John prior to July 22, 2015, is unenforceable in its entirety, as each agreement is unreasonably restrictive and does not protect legitimate business interests but instead acts to eliminate ordinary competition.

121. The Court should further reform, assuming the Court finds any legitimate business interest worthy of protection and otherwise finds reformation proper, any Non-Competition Agreement entered between any Agent and Landstar after July 22, 2015, in accordance with Arkansas Code Annotated section 4-75-101(f).

122. Plaintiff's requests related to this prayer for declaratory judgment meet the requirements of Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3).

## **PRAYER FOR RELIEF**

123. The Plaintiff prays for a Jury Trial for all issues so triable and reserves the right to amend this Complaint as permitted by the Federal Rules of Civil Procedure.

WHEREFORE, Plaintiff Michelle Warner, individually and on behalf of all those similarly situated to her, respectfully demands the following:

A. Issuance of notice as soon as possible to all persons who were employed by Defendant on a nonexempt basis during any portion of the three (3) years immediately preceding the filing of this action. Generally, this notice should inform them that this action has been filed, describe

the nature of the action, and explain their right to opt in to this lawsuit if they were not paid the proper minimum wage and/or overtime compensation for their hours worked in excess of forty (40) in any week during the statutory period;

B. Designation of this action as a collective action pursuant to 29 U.S.C. section 216(b);

C. A finding that the Defendant's violations of the FLSA were willful;

D. Damages and restitution for all unpaid wages (including fringe benefits and bonuses), unpaid overtime compensation (at time and one-half), and unpaid minimum wages and other injuries, as provided by the FLSA;

E. Liquidated damages, as provided by the FLSA, equal to the sum of the amount of wages and overtime compensation that were not properly paid;

F. An Order enjoining and restraining Little John from violating provisions of the FLSA and entering judgment herein against Little John in the amount due Plaintiff Michelle Warner and other employees of Little John similarly situated for unpaid compensation;

G. A declaration and certification that this action is a proper class action under F.R.C.P. 23 for the claim that Little John violated the AMWA, naming the Plaintiff Michelle Warner as proper class representative;

H. A declaration and determination that Little John violated the AMWA by failing to properly pay compensation due to the Plaintiff Michelle Warner and other members of the class;

I. An Order enjoining and restraining Little John from violating provisions of the AMWA and entering judgment herein against Little John in the amount due Plaintiff Michelle Warner and other employees of Little John similarly situated for unpaid compensation;

J. An award of damages for compensation withheld from Plaintiff Michelle Warner, the putative Class Action Plaintiffs, and others with similar job titles, duties, and compensation structures, to be paid by Little John;

K. An award of additional damages as a statutory penalty, pursuant to A.C.A. section 11-4-218(a) for willfully withholding wages from Plaintiff Michelle Warner, the Putative Class Action

Plaintiffs, and others with similar job titles, duties, and compensation structures, to be paid by Little John;

L. Reasonable attorney fees, costs, and expenses of this action;

M. Pre-judgment and post-judgment interest, as provided by law;

N. An Order for a complete and accurate accounting of all the compensation to which the Plaintiffs are entitled;

O. An Order assessing all applicable penalties for the violations set forth herein;

P. An Order requiring Defendant to preserve all electronically stored information relevant to this lawsuit;

Q. A declaration that, depending on the date of execution, the Non-Competition Agreement utilized by Landstar with its Agents is either unenforceable as a matter of law, or that such agreements should be reformed to be enforceable, if possible and proper; and

R. Any and all other relief to which any named Plaintiff or Putative Plaintiff is entitled.

    Respectfully Submitted,

    Michelle Warner, individually and on behalf of all others similarly situated.

BY: _____
George M. Rozzell IV, AR Bar No. 2008032
Jenna R. Fogleman, AR Bar No. 2015150
Keith, Miller, Butler, Schneider & Pawlik, PLLC
224 S. 2nd St., Rogers, AR 72756
T: 479.621.0006    F: 479.631.6890
grozzell@arkattorneys.com
jfogleman@arkattorneys.com