IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| MICHELLE WARNER,<br>individually and on behalf of all others<br>similarly situated, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | ) | Case. No. 5:19-cv-05042-PKH |
| LITTLE JOHN TRANSPORTATION<br>SERVICES, INC.;<br>CHRISTOPHER DALE;<br>STEVEN DALE, | )<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | COLLECTIVE ACTION |

BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT

The Plaintiff, Michelle Warner, on behalf of herself and all others similarly situated, comes before this Court and for her Brief in Support of her Motion for Partial Summary Judgment:

I.  INTRODUCTION.

While the crux of this action relates to mandatory "off the clock" work and the effects of that work on each Plaintiff's life, each Plaintiff to this action has worked overtime "on the clock" for which he or she not been properly compensated. Since at least April 2016, the Defendants have been aware of the alleged impropriety of their practices but failed to take corrective action to remedy those unlawful practices. Instead of paying these employees overtime as required, the Defendants classified each Plaintiff as exempt under the administrative exemption of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213(a)(1) (the same exemption applies to the Arkansas Minimum Wage Act). That exemption is inapplicable for three reasons, but this Brief focuses on the two reasonss which are easily established by undisputed facts. Each of these two reasons individually entitle the Plaintiffs to partial summary judgment on liability. *See* Fed. R. Civ. P. 56(a), permitting Summary Judgment on the part of each claim.

First, each Plaintiff was guaranteed pay in an amount less than required for the exemption to apply, which until January 1, 2020, was $455.00 per week. Second, each Plaintiff was subject to a uniform pay deduction policy based upon the quantity of their work also which eliminates the application of the exemption. This pay deduction policy also forfeits the possibility that this case may be subject to the Fluctuating Workweek calculation method. Beyond the inapplicability of the exemption, the undisputed facts also show that the misclassification of the Plaintiffs was willful and that the Defendants had no reasonable grounds to believe they were complying with the FLSA.

Due to the the structure of the Defendants' pay practices, the Plaintiffs are entitled to judgement as a matter of law that they were misclassified as exempt from March 2, 2016 through January 1, 2020 (or the point at which their employment terminated), and are entitled to pay at a one and a half time overtime premium of each's regular work rate for each hour of overtime they may prove at trial. Because the Defendants' misclassification was willful and instituted without reasonable grounds, each Plaintiff is entitled to a three year statute of limitations review (under both Arkansas and Federal law) from the date he or she joined this action, as well as the liquidation of those damages proven, plus a reasonable attorneys' fee and costs.

II.     **LAW AND ANALYSIS.**

   a.  **Case history and pay practices.**

According to the admissions on file in the Answer, Little John is incorporated in Arkansas and headquartered in Russellville, Arkansas. It has additional offices in Springdale, Arkansas, and Houston, Texas. It performs freight brokerage services as an agency affiliated with a transportation company known as Landstar. Its owners and executives who make decisions about the employment practices of Little John are Christopher Dale and Stephen Dale. *See generally,* Doc. No. 22, Answer. Christopher Dale and Stephen Dale each have testified to maintaining that control and the ability to hire and fire employees. *See also* Exhibit 1, Deposition of Christopher Dale at 11, Exhibit 2, Deposition of Stephen Dale at 9-13.

On March 1, 2019, Plaintiff Michelle Warner filed this FLSA collective action against Little John Transportation Services, Inc. ("Little John"), Christopher Dale, and Stephen Dale for overtime pay under the Fair Labor Standards Act ("FLSA") (as amended), 29 U.S.C. section §201, *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Arkansas Code Annotated section 11-4-211. *See* Doc. No. 1, Complaint. On April 8, 2019, Defendants filed their Answer to Warner's Complaint, admitted that Little John employed Plaintiff as an Agent and did not pay her or the other Plaintiffs overtime. Instead, the Defendants claimed that Plaintiffs were exempt from federal and state overtime laws. *See* Doc. No. 22 - Answer ¶¶ 3, 5, 13.

They made this claim of exemption knowing that the Department of Labor had investigated these practices in 2016 and found that an employee was entitled to overtime. *See* Exhibit 3, FOIA Response from Wage and Hour department, File No. 1789408. They further knew, as of August 2016, that at least 48% of their employees were consistently working ON THE CLOCK more than forty hours during a period of studied workweeks in July. *See* Exhibit 1, Exhibit 4 and 16 thereto, Email Correspondence related to Recorded Overtime.

On May 14, 2019, the Court granted Plaintiff's motion to conditionally certify a collective action under the FLSA and certified the following class:

> All current and former salaried "Freight Brokers" and "Agents"[1] employed by Little John Transportation Services, Inc. at any time during the three years prior to their filing of a Consent to Join Collective Action Form.

*See* Doc. No. 47, Order. The following individuals opted and remain as part of the FLSA Collective Action: Amber Barnes, Michael Benthin, Steffanie Blackwood, Jeremy Bradsher, Kevin Eigen, Rosetta Fletcher, Faith Hallinan, Dennis Head, Daryl Horn, Samantha Jones, Austin Kelly, John

---

[1] The Court has recognized that there exists no dispute that the job title of Agent and Freight Broker is used interchangeably for the Plaintiffs' position.

King, Nikki Madison[2], Robert Pease, Marian Penner, Stephanie Warren, and James Wooten.[3] As stated below, none of them were exempt from overtime under the FLSA and there can be no dispute that each worked more than forty hours in workweeks during the statutory period.[4]

Named Plaintiff, Michelle Warner, worked as an Agent and Freight Broker from 2015 until June 3, 2019 in the Springdale Office, and the remaining opt-in Plaintiffs, having been identified during the conditional certification process, worked in the various offices of Little John in Arkansas and Texas during the statutory period of review (March 2, 2016 through the present).

Generally, the job duties of each Agent are to make calls, book freight, and find trucks. *See* Doc. No. 24-2 at Pg. 18. Said more formally, the undisputed jobs of each Plaintiff are the same, regardless of office. The Parties agree that each Plaintiff acted as an Agent for the Defendants. These Agents procure freight customers and then to broker such freight either to Landstar-designated carriers or to third-party carriers as may be allowed by the customer. The Defendants then receive a percentage of the profit from each brokered load pursuant to an agreement with Landstar. The Defendants require that Agents procure and manage loads of freight, and require that Agents continue this management for each load as long as any certain

---

[2] Plaintiff Nikki Madison recently passed away and her estate is commencing with an action in Arkansas Probate Court to have appointed a special administrator of her estate to substitute her position in this action in accordance with Fed. R. Civ. P. 25. FLSA claims survive the death of a Plaintiff. *See e.g. Daigle v. Angeline Enter., Inc.,* 2015 WL 7271746 *1 (M.D. Fla. Oct. 27, 2015) ("a claim for compensation due under the FLSA survives the death of the employee."); *Acebal v. U.S.*, 60 Fed. CL. 551, 557 (2004); *Lai Yoong Low, et. al. v. Tian Yu, Inc., et. al.,* 2015 WL 1011699 *3 (S.D.N.Y. March 9, 2015); *McFeely v. Jackson Street Entertainment, LLC.,* 2014 WL 4182231 *2 (D. Md. Aug. 19, 2014)*; Veliz v. Cintas Corp.,* 2008 WL 281171 *2, fn. 2 (N.D. Cal. July 17, 2008)*. also see Guenther v. Griffin Constr. Co., Inc.,* 846 F.3d 979, 982 (8th Cir. 2017) [applying federal common law of survival to Americans with Disabilities Act due to national mandate of ADA, which here is similar in nature to FLSA].

[3] Since opting in, six Plaintiffs have either expressed their intention or desire to no longer proceed with his or her claim or it has been factually determined that those individuals do not have claims within the three years proceeding having opted into this action. By this Motion, the Plaintiff moves to dismiss Plaintiff's Adair, Bliss, Doster, Eckleberry, Medina, and Yost without prejudice in accordance with Fed. R. Civ. P. 41 and the Defendants agree with such dismissal. Note that Plaintiff Adiar (who's three year statute excludes his claim) was the complainant for the April 2016 DOL investigation.

[4] The Plaintiffs' claims are that each of them also worked overtime hours "off the clock" but the overtime which is addressed in this Motion stems from the recorded and documented overtime that each worked during his or her employment by the Defendants.

load is in transit such that the responsible Agent must be available to assist with that load at any time. Little John requires each Agent to be available by his or her cell phone (paid for by each agent individually and without reimbursement for phone service by Little John) at any time a load is in transit. If the load is "on the board," meaning active, management of that load is the Agent's responsibility no matter what time an issue may arise with that load. *For all*, s*ee* Doc. No. 22.

In Discovery, Michael Benthin, Michelle Warner, and Nikki Madison were each provided a complete spreadsheet of all time worked and pay received. Exhibit 4 at 1-12. The remaining Plaintiffs were not given such detailed analysis, but complete timecards, paystubs, and pay statements for each were provided and examples proving the Plaintiffs' claims to on-the-clock overtime worked and pay being deducted have been selected for this Motion. Those records are collectively attached as Exhibit 4 hereto, bookmarked for the Court's convenience. Exhibit 4 shows that:

1. Michelle Warner's base pay was never more than $425.00 per week and her pay was docked for absences in full and half day increments over the course of the statutory period. Exhibit 4 at Pgs. 1-4.

2. Until October 2017 Michael Benthin's base pay was less than $455.00 per week, and he was docked for absences in full and half day increments over the course of the statutory period through at least January, 2019. *Id.* at Pgs. 5-8.

3. Nikki Madison's base pay never exceeded $455.00 and she too was docked for partial days missed. *Id.* at Pgs. 9-12.

4. Robert Pease worked over forty hours on the clock for the pay period ending February 18, 2018. He was paid a base pay of $400.00 for that week. *Id.* at 13-15.

5. Rosetta Fletcher was paid a base pay of $300.00 for the week ending July 23, 2016. Among other weeks, she clocked more than forty hours for the week ending March 25, 2018, and during that time was paid a base pay of $400.00 per week. Her timecard ending May 5, 2018 evidences that Ms. Fletcher was docked pay for days of work

missed. Little John did not check whether work was performed from home on days missed and would require each Agent to be available to answer calls on Flex days and when away from the office. *Id.* at 16-25; *see also*, Exhibit 5, Deposition of Teresa Dale at Pg. 13.

6. Stephanie Warren's timecard of March 18, 2018 indicates she worked more than forty hours on the clock at a base pay rate of $400.00. Exhibit 4. at 25-26.

7. Amber Barnes' timecard ending April 8, 2018 indicates she was docked for missing 3.75 hours of work, with her base pay reduced to $360.00 from what would otherwise been $400.00. Her timecard ending October 7, 2018 evidences that she worked more than forty clocked hours without overtime pay and that her base was $400.00 per week. *Id.* at 27-32.

8. Steffanie Blackwood's timecard ending June 28, 2017 evidences that she worked over forty hours that week and that her base pay was $400.00. *Id.* at 33-35. Her timecard of July 15, 2017 evidences that she earned $34.00 in commissions that week on top of her base pay of $400.00, but that her "base" pay was supplemented to equal a total of earnings for the week of $500.00. *Id.* at 36-38. For some employees, this supplementation of base pay would occur, but because it considered the employee's commissions for the week, this practice did guarantee a base pay excluding commissions of $455.00 per week.

9. Erik Bliss's timecard ending August 10, 2016 evidences that he worked over forty hours that week and that his base pay was $400.00. *Id.* at 39-41.

10. Jeremy Bradsher's timecard ending June 25, 2016 evidences that he earned a base pay of $300.00 for working more than forty hours per week, but that it was supplemented as there appear to be only commissions of $20.68 for the week. Not that it matters, but the supplementation was only to an amount of $450.00 total. *Id.* at 42-44. For his pay period through August 5, 2016, Mr. Bradsher worked over forty

hours again, and his base pay plus commissions was again supplemented in a different amount – this time to total $500.00. *Id.* at 45-47.

11. Kevin Eigen's timecard through November 12, 2016 indicates he worked more than forty hours that week with a base pay of $450.00. *Id.* at 48-50.

12. Faith Hallinan's timecard through January 21, 2018 indicates that she was docked one- and one-half days' pay for the week and that her base pay was $300.00. *Id.* at 51-53. Her timecard for the next week indicates that she worked more than forty hours on the clock but was paid a base rate of $300.00. *Id.* at 54-56.

13. Dennis Head's payroll card the week ending July 22, 2016 evidences that he was paid a base pay of $300.00 for more than forty hours of work per week, made $97.05 in commissions and had his commissions supplemented by $102.95. *Id.* at 57-59.

14. Daryl Horn's timecard through January 12, 2018 evidences that he was paid a base rate of $300.00 and was docked for a half day missed. *Id.* at 60-62. His timecard through the week ending May 20, 2018 evidences that he worked over forty hours on the clock and was paid a base pay of $300.00. *Id.* at 63-65.

15. Samantha Jones' timecard through January 28, 2018 shows that she worked over forty hours that week for a base pay of $400.00. *Id.* at 66-68. Her timecard through February 18, 2018 evidences that she was docked a day's pay for missing Monday, February 12th. *Id.* at 69-71.

16. Austin Kelly's timecard ending June 24, 2018 evidences that he worked more than forty hours that week with a base pay of $400.00. *Id.* at 72-74. His timecard for the week ending July 28, 2018 evidences that his pay was docked a half day for missing less than four hours. *Id.* at 75-77.

17. John King's timecard through July 15, 2016 evidences that he worked over forty hours with a base pay of $300.00, plus $107.70 earned commissions, plus $92,30 in supplementation to commissions from Little John. *Id.* at 78-80.

7

18. Sandy Penner's timecard through June 3, 2017 indicates that her base pay (at that time $500.00) was deducted for missed days. *Id.* at 86-88. After December 14, 2017, Ms. Penner was not paid any base and worked out of her home. *Id.* at 84, 85, 89, 90.

19. James Wooten's timecard ending on Friday, July 15, 2016 evidences that he worked more than forty hours that week with a base pay of $300.00 plus supplementation to his commission of $40.06. *Id.* 91-93. His documents for the week ending September 15, 2016 evidences that he worked more than forty hours for a base pay of $300.00 plus no supplementation from Little John.

As evidenced by the pay documents attached as Exhibit 4, Each of these employees worked overtime, and, at least at some point during the statutory period, received a base pay of less than $455.00 per week. It cannot be disputed that over the course of the statutory period, the Defendants have been aware that each of these Plaintiffs worked overtime. *See* Exhibit 1 at Exhibits 4, 16, recognizing that in July 2016 48% of Agents worked overtime on the clock (without analyzing time off the clock). It is further undisputed that these employees were subject to a pay deduction policy for missed work, including half days. *See* Exhibit 5, Deposition of Teresa Dale at 13-15; *see also* Doc. No. 43, Exhibit 14.

### b. The Plaintiffs were each misclassified as exempt from overtime.

Section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), requires that employees be paid time and a half for work over forty hours a week. Section 13(a)(1) of the FLSA, 29 U.S.C. § 213(a)(1), however, provides an exemption from the overtime pay requirement for persons "employed in a bona fide executive, administrative, or professional capacity." Employers must prove by clear and convincing evidence that an employee qualifies for exemption. *Clark v. J.M. Benson Co.*, 789 F.2d 282, 286 (4th Cir.1986). These employers simply cannot meet that burden.

Until this year, Little John did not consider its Agents eligible for overtime, and Agents did not receive overtime pay. *See* ECF No. 22, Answer ¶ 3. Little John uniformly classifies freight

brokers/agents as exempt from overtime under state wage and hour laws. ECF No. 22, Answer ¶ 13; ECF No. 34-1. This classification decision has existed at least since March 1, 2016. *See* Doc No. 43, Exhibits A-D, Little John Employment Manuals from 2016, 2017, 2018, and 2019 (with addendum). Little John's policies have been established and maintained by Christopher Dale and Stephen Dale within the State of Arkansas. Exhibit 1 at 11, Exhibit 2 at 9-13. While Defendants declare in Little John's manuals that salaried employees do not receive overtime, they do not provide an exemption basis therein. *See* Doc. No. 43, Exhibits A-E. Little John now claims each Agent is exempt under the administrative exemption. Doc. No. 31-1 at ¶ 9, Affidavit of Chris Dale. That administrative exemption does not apply to these Plaintiffs.

At all times relevant in this case, the applicable Fair Labor Standards Act Regulations (29 CFR §§ 541.200, 541.602) required that any employee subject to the administrative exemption be paid a salary basis of $455.00 per week. *See* 29 CFR §§ 541.200, 541.602-604 (2004) [69 FR 22260, 22262, 22269-22271]. An employee is "considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, **a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed**. Subject to the exceptions provided…an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." (emphasis added). *Id.* at 541.602.

"An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." *Id.* at 541.603. Further, pursuant to Sec. 541.604, "[a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, **if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis.** Thus,

9

for example, an exempt employee **guaranteed at least $455 each week paid on a salary basis** may also receive additional compensation of a one percent commission on sales." (emphasis added). *Id.* at 541.604.

### i. Each Plaintiff worked overtime during pay periods in which he or she was not paid a salary basis equal to $455.00 per week.

As admitted in its Answer, Little John's personnel policies, including policies related to employment terms, recording time worked, time off, and compensation of freight brokers or "Agents," are uniform across all Little John locations. *See* Doc. Nos. 43-1 through 43-8, Little John Employment Manuals from 2016 v1, 2016 v2, 2017, 2018, Undated Landstar Policy; New Hire Checklist: Arkansas; New Hire Checklist: Texas; Restrictive Covenant Agreements, Little John Training Manual. As discussed in more detail above, during the immediate three-year period prior to the filing of this action, Little John compensated its Agents through base "salaries" plus commissions earned for freight booked and settled. If an Agent's commission did not reach certain predetermined levels, Little John would add to that commission to reach a higher figure. That supplementation, as is evidenced periodically in Exhibit 4, by its nature varied as it was based upon commissions earned by each Plaintiff, and did not guarantee a base pay, exclusive of commissions, of at least $455.00. *See e.g.* Exhibit 4 at 78-80, 91-93. The amount it added varied depending on the commission earned. *Id*.

As detailed above, each Plaintiff in this case performed work during the statutory period where his or her "salary" was less than $455.00 per week, and where his or her "salary" was subject to deduction based on the quantity and quality of his or her work. *See* Exhibit 4; Exhibit 5 at 13-15. While the Defendants may claim that the commission supplementation "guaranteed" that certain of the Plaintiffs were to receive a set amount more than that threshold, that supplementation in no way was based upon a predetermined or set amount and only added to the commissions that each Agent earned. Under the Defendants' pay structure, the Plaintiffs

were not guaranteed an amount of $455.00 per week paid on a salary basis. The "salaries" paid were more often $300, $400, or $425 plus commissions. *See generally*, Exhibit 4.

### ii. The Plaintiffs' pay was deducted such that even if the exemption applied, it was lost.

Each Plaintiff in this case performed work within the framework of uniformly applied policies where his or her "salary" was subject to deduction based on the quantity and quality of his or her work. *See* Exhibit 4, Exhibit 5 at 13-15. While the Defendant may claim that beyond the "base" pay paid to each employee included a "guaranteed" commission payment to reach a certain level, that "guaranteed" pay was taken away in any week in which the employee earned commissions exceeding that "guaranteed" supplementation amount. Also, that "guaranteed" amount would change week by week depending on the amount of commissions that were earned and the amount necessary to boost an Agent's pay to the chosen threshold (which in Nikki Madison's and other's cases was less than $455 regardless).

Beyond that, the pay practices employed by the Defendants deducted from the Agents pay for time (full and partial) missed at work regardless of whether work was performed outside of the office during that time away from work. *See* Exhibit 4, Noted Deductions of Pay; *also see* Exhibit 5, Deposition of Teresa Dale at 13-15.; Doc. 43-14, Email Correspondence Acknowledging docking of pay and uniformity of plan. While this policy of deducting each Agent's base pay after the exhaustion of his or her paid time off may be permitted for full day absences in which no work is performed, the Defendants' policy to deduct wages incrementally based upon time missed during the day evidences that they did not intend to pay Agents on a salary basis. *See* 29 C.F.R. § 541.602(b), *See* also Dept. of Labor FLSA2005-7 ("Payment of the employee's guaranteed salary must be made, even if an employee has no accrued benefits in the leave plan and the account has a negative balance, where the employee's absence is for less than a full day.") *See* also communication between Christopher Dale and Michael Benthin addressing deduction of partial days, Doc. 43-14. In that discussion, Mr. Dale informs Mr. Benthin that "You know we

11

expect you to be on site managing your sales and your freight at least 40 hours a week. The way to cure having your base docked is One, be at work, two have PTO to cover your time away from work or three cover enough freight to make up for not being at work." Also in that line of communication, Teresa Dale asked Chris Dale "Do I dock him for the 1/2 days like I do everyone else." *Id.*

"An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis."  29 CFR § 541.603. Because the Defendants' actions clearly indicate that they did not intend to pay their employees on a salary basis, the Administrative Exemption simply does not, and has never, applied to any of the Plaintiffs during any week as the written, and pervasive, policy of the Defendants was to deduct "guaranteed" pay based upon the quantity of work performed by the Plaintiffs.

No matter what they may say now, the policy that was written and – as evidenced above – implemented, shows that the Defendants had an actual practice of making improper deductions. The policy was that :  "Base Pay: Is for 40 hours of work per week and 8 hours per day (that does not include lunch time). As of now, Time is deducted oft leave balances when not working 8 hours per day in 15 minute increments. If no leave is available, time missed is deducted from base pay." See Ex. 1 at Exhibit 4, Orientation Checklist (policy of deducting time for less than full days missed).  As such, each Plaintiff was improperly classified as exempt.

### c. The misclassification of the plaintiffs was willful, and the Defendants have no reasonable grounds for believing they were complying with the FLSA.

The statute of limitations for an FLSA action is extended to three years if the violation is "willful."  A "willful" violation of the FLSA is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." M*cLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).  The undisputed evidence before us, the willfulness of the Defendants' violations cannot be genuinely contested.

It is undisputed that every single Plaintiff at some point was paid a "salary" of less than $455.00 per week, and that amount has been in place by the administrative exemption regulation since 2004 (until the regulation salary threshold was increased last year).  The Defendants have admitted they sought no advice on the propriety of its pay practices.  Exhibit 5 at 13-16.  Little John suffered an April 2016 Department of Labor investigation into its pay practices and simply decided to ignore its findings.  Exhibit 3, DOL FOIA Response.  The Defendants, no matter those issues, continued to require each Agent to be available to coordinate and handle his or her loads after regular working hours (with regular working hours being 7:30 am to 4:30 pm) while refusing them compensation for that time.  Then the Defendants failed to maintain any method of keeping time worked by its Agents after working hours. *See* ECF No. 24-2; also 31-1.

But the Defendants had direct involvement with the DOL on this issue, and cannot deny they were aware of the FLSA regulations in place in 2016.  Then, faced with the proposition that the administrative exemption base salary requirements were to be raised, Little John studied the risk of overtime applying to its Agents and Freight Brokers in 2016. *See* Exhibit 1, Exhibits 4 and 16 thereto (email chains related to potential 2016 Department of Labor Regulation amendments and Little John timekeeping practices). That study MADE IT FACIALLY CLEAR that 48% of the Defendants' Agents were CONSISTENTLY working overtime on the clock at work (as studied at each office) and recognized that each Agent and Freight Broker's work performed after hours was not included in the calculation. *See* Exhibit 1, Exhibit 16 thereto (emphasis added). Interestingly, Little John indicated to its employees the reason for the study being work/life balance. *See* Exhibit 1, Exhibit 4 thereto.

It is clear by the evidence presented that the Defendants were aware of the Department of Labor's requirements but simply chose to ignore the regulations applying them.  According to Teresa Dale, they believed that since they paid each person certain amounts per year in total, that these employees were exempt.  See Exhibit 5 at 11-12.  And these practices not only continued through the April DOL matter, but after another suit in Texas, and then throughout this

13

action.  The Defendants' reckless disregard for the law could not be more apparent, and a three year statute of limitations is warranted.

An award of liquidated damages "is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." *Braswell v. City of El Dorado*, 187 F.3d 954, 957 (8th Cir.1999).   The Defendants clearly knew of the FLSA and that their pay practices were in violation of it (as had been indicated by the Department of Labor in April, 2016), yet they continued to misclassify their employees anyway; without meeting the salary basis threshold, refusing to pay on the clock overtime, and refusing to track and pay for off the clock work – that their policies required.  See Doc. 24-2.  Then, for good measure, the Defendants docked the wages of individuals who may miss a half day of work – or a full day even – without any practice in place to determine whether those who missed may have, perhaps, worked remotely.  See Exhibit 16 at 12-15. But of course those Agents worked remotely because they had loads on the board and those load were their responsibility.  Regardless, the Defendants chose to deduct pay from their Agents as if no work had been done and as if they were hourly employees.  *Id.*

When asked to produce any Department of Labor Opinions upon which Little John relied to form its pay policies or designate any employee as exempt, its response was "[n]one." *See* Doc. 43-15, Answers to Discovery Requests at RFP No. 11. Unsurprisingly, it has misclassified its workers as exempt and docked their pay as if they were hourly workers. Such a practice is clearly in violation of the FLSA and there is no "reasonable ground" upon which they could base their facially unlawful practices.

The Defendants simply have no excuse for believing that their actions were in compliance with the FLSA.  They docked pay for half days missed.  They docked pay for days employees were out of the office without any check as to whether work was still being performed.  They failed to pay a guaranteed salary of $455.00 per week.  They were the target of a DOL complaint, where they used profanity with the WHD officer.  Exhibit 3 at Pg. 3, April 22, 2016 Entry ["Called owner

14

Chris Dale. I went over (redacted). He was disrespectful, he used profanity words. [Employer] alleged that (redacted) is not due OT and will not pay."] They then studied how much on-clock overtime was being performed but they failed to keep records of other overtime time or adopt an enforced policy recording those hours. Liquidated damages, along with an extended statute of limitations is not simply appropriate, it is commanded.

### d. Christopher and Steven Dale are employers under the FLSA.

The FLSA provides that an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "[A] corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Solis v. Hill Country Farms, Inc.*, 808 F. Supp. 2d 1105, 1115 (S.D. Iowa 2011), *aff'd*, 469 F. App'x 498 (8th Cir. 2012); *see also Wirtz v. Pure Ice Co.*, 322 F.2d 259, 263 (8th Cir. 1963) (a finding of individual liability under the FLSA would be "well supported" where there is "a combination of stock ownership, management, direction and the right to hire and fire employees[.]").

Little John, an Arkansas Incorporation, headquartered in Russellville, is owned by Christopher and Steven Dale. Each of them exercises oversight, supervision, and communication from their headquarters in Russellville, Arkansas. Christopher Dale and Steven Dale, as they have testified in deposition, are each directly involved in issues that may arise with each employee, his or her work, and related personnel matters. *See* Exhibit 1, Deposition of Christopher Dale at 11; Exhibit 2, Deposition of Steven Dale at 9-13. As such, they are individually liable to the Plaintiffs for the damages each may prove.

### e. The time and a half method of calculation is required.

Section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), requires that employees be paid time and a half for work over forty hours a week. 29 CFR § 778.114(a) permits an employer to use the fluctuating workweek method to properly compute overtime compensation based on the regular rate for a nonexempt employee under the following circumstances:

"(1) The employee works hours that fluctuate from week to week;

(2) The employee receives a fixed salary that does not vary with the number of hours worked in the workweek, whether few or many;

(3) The amount of the employee's fixed salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours the employee works is greatest;

(4) The employee and the employer have a clear and mutual understanding that the fixed salary is compensation (apart from overtime premiums and any bonuses, premium payments, commissions, hazard pay, or other additional pay of any kind not excludable from the regular rate under section 7(e)(l) through (8) of the Act) for the total hours worked each workweek regardless of the number of hours, although the clear and mutual understanding does not need to extend to the specific method used to calculate overtime pay; and

(5) The employee receives overtime compensation, in addition to such fixed salary and any bonuses, premium payments, commissions, hazard pay, and additional pay of any kind, for all overtime hours worked at a rate of not less than one-half the employee's regular rate of pay for that workweek."

*Id.*

The fluctuating work week does not apply here. As discussed at length, *supra*, the Defendants patently failed to pay a fixed salary that "does not vary with the number of hours worked in the workweek." Their policies and procedures prove it. Due to their actions of deducting the Plaintiff's pay below the base salary for full and half days missed without regard to whether work was performed, they are not entitled to the fluctuating work week calculation method, and must be required to pay all overtime at time and a half.

**V. CONCLUSION**

Until January of this year, for an employee to qualify for the Administrative Exemption under the FLSA, he or she must have been compensated on a salary basis of no less than $455

per year. 29 C.F.R. § 541.200(a).  As admitted by Mr. Dale and as evidenced by the pay records attached as Exhibit 4, each of these Plaintiffs at some point made a guaranteed base of less than $455.00 per week as required notwithstanding the pay deducted for time missed.  Since August of 2018, a select few have made more as a supposed "base", but their pay has still been subject to deduction. *See* Exhibit 4 at Michael Benthin and Rosetta Fletcher Bookmarks*, see also* ECF No. 31-1 at ¶ 4. Each of these Plaintiffs, during the statutory period, earned a base "salary" less than that required by 29 C.F.R. § 541.200(a) and are not exempt from overtime, because each did not receive a salary basis of $455.00 per week. As such, each is entitled to a judgment as a matter of law that the Defendants are liable to each of them for the overtime hours during the three year statutory period they may prove at trial, calculated at one and a half times their regular work rate, plus an equal amount for liquidation.  These Plaintiffs are entitled to that relief.

Plaintiff respectfully requests that this Court grant her motion finding that each defendant is jointly and severally liable to each Plaintiff for all overtime that was worked by each of them in an amount proven at trial.

           Respectfully Submitted on behalf of herself and all other similarly situated,

           Michelle Warner, Plaintiff

      By:  /s/ George M. Rozzell IV_____
          George M. Rozzell IV, AR Bar No. 2008032
          Miller, Butler, Schneider, Pawlik, Rozzell PLLC
          224 S. 2nd St., Rogers, AR 72756
          112 W. Center St. Ste 555, Fayetteville, AR 72701
          T: 479.621.0006 F: 479.631.6890
          grozzell@arkattorneys.com

## **CERTIFICATE OF SERVICE**

    I, George Rozzell, hereby certify that on this 29th day of September 2020, I caused the foregoing filing to be delivered to each Defendant of record through its designated counsel by submitting the same with the Court's Electronic Filing System which shall provide notice to:

Christy Comstock
Wales & Comstock
3608 North Steele Boulevard, Suite 101
Fayetteville, AR 72703

Daniel Herrington
Allison Pearson-Rhodes
Katie Campbell
Friday, Eldredge, and Clark, LLP
400 West Capitol Avenue
Suite 2000
Little Rock, Arkansas 72201

                                      /s/ George M. Rozzell IV
                                      George M. Rozzell IV